## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| H & S Equipment, Inc. and Mark Holloway, Inc. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. CIV-15-1244-HE |
| | ) | |
| Devon Energy Production Company, L.P., successor by merger to Felix Energy, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

---

Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102-7103
405/235-9621
405/235-0439 (FAX)
tim.bomhoff@mcafeetaft.com
laura.long@mcafeetaft.com
***Attorneys for Defendant***

March 15, 2017

# TABLE OF CONTENTS

**Page(s)**

BACKGROUND AND SUMMARY OF ARGUMENT ............................................... 1

UNDISPUTED MATERIAL FACTS .......................................................................... 3

ARGUMENT AND AUTHORITIES .......................................................................... 5

    I.     Pertinent standards for summary judgment ................................................... 5

    II.    Devon is entitled to judgment as a matter of law because Plaintiffs will not have any expert testimony sufficient to establish the existence of elements essential to their claims. ................................................................. 6

        a.    Plaintiffs' claims necessarily involve analysis of technical and scientific factual matters that are not within the skill or knowledge of average persons. ....................................................................................... 7

        b.    Expert testimony is required to prove causation, an essential element to all Plaintiffs' claims. .......................................................................... 10

        c.    Expert testimony is needed to establish the standard of care and its breach to support Plaintiffs' negligence claims and to support Plaintiffs' request for punitive damages. ................................................ 13

        d.    Expert testimony is required to establish Plaintiffs' appropriate measure of damages. .............................................................................. 15

    III.    Drainage damages are not recoverable for trespass in Oklahoma as a matter of law due to the rule of capture, and the need for expert testimony to support Plaintiffs' damages is especially crucial in light of this fact. ..................................................................................................... 17

    IV.    The appropriate measure of damages is either the diminution in value to Plaintiffs' leasehold interest, or, if less, the cost to repair and restore the injuries to the leasehold. ............................................................................... 19

    V.    Plaintiffs are not entitled to punitive damages because no rational trier of fact could find, based on the record, that Felix acted in conscious disregard of Plaintiffs' rights ..................................................................... 21

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*19 Solid Waste Dep't Mechs. v. City of Albuquerque,*
156 F.3d 1068 (10th Cir. 1998) ...................................................................... 21

*Alt v. Am. Income Life Ins. Co.,*
337 F.2d 472 (10th Cir. 1964) ........................................................................ 21

*Am. Mech. Solutions, L.L.C. v. Northland Process Piping, Inc.,*
184 F.Supp.3d 1030, 1060-61 (D. N.M. 2016) ................................................ 6

*Arrowhead Energy, Inc. v. Baron Expl. Co.,*
930 P.2d 181 (Okla. 1996) .............................................................................. 18

*Atl. Richfield Co. v. Tomlinson,*
859 P.2d 1088 (Okla. 1993) ............................................................................ 19

*Bird v. W. Valley City,*
832 F.3d 1188 (10th Cir. 2016) ........................................................................ 5

*Bowen v. Amoco Pipeline Co.,*
254 F.3d 925 (10th Cir. 2001) ........................................................................ 20

*Briscoe v. Harper Oil Co.,*
702 P.2d 33 (Okla. 1985) ................................................................................ 20

*Brown v. USA Truck, Inc.,*
2013 WL 4848837 (W.D. Okla. Sep. 11, 2013) ............................................. 12

*Capstick v. Allstate Ins. Co.,*
998 F.2d 810 (10th Cir. 1993) ........................................................................ 21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................... 5

*Christian v. Gray,*
65 P.3d 591 (Okla. 2003) .......................................................................... 11, 15

*Christy v. Travelers Indem. Co. of Am.,*
810 F.3d 1220 (10th Cir. 2016) ........................................................................ 5

*Cities Serv. Oil Co. v. Merritt*,
    332 P.2d 677 (Okla. 1958) ............................................................... 16

*Coastal Oil & Gas Corp. v. Garza Energy Trust*,
    268 S.W.3d 1 (Tex. 2008) ............................................... 8, 11, 18, 23

*Denco Bus Lines v. Hargis*,
    229 P.2d 560 (Okla. 1951) ............................................................... 20

*Diné Citizens Against Ruining Our Env't v. Jewell*,
    839 F.3d 1276 (10th Cir. 2016) ......................................................... 9

*Discovery Operating, Inc. v. BP Am. Prod. Co.*,
    311 S.W.3d 140 (Tex. App. 2010) ................................................. 9, 13

*Doss Oil Royalty Co. v. Tex. Co.*,
    137 P.2d 934 (Okla. 1943) ............................................................... 22

*Fairways Offshore Expl., Inc. v. Patterson Servs., Inc.*,
    2013 WL 371601 (Tex. App. Jan. 31, 2013) .................................... 9

*Fransen v. Conoco, Inc.*,
    64 F.3d 1481 (10th Cir. 1995) ......................................................... 17

*Greyhound Leasing & Fin. Corp. v. Joiner City Unit*,
    444 F.2d 439 (10th Cir. 1971) ................................................... 17, 18

*Gruger v. Phillips Petroleum Co.*,
    135 P.2d 485 (Okla. 1943) ............................................................... 18

*Harder v. F.C. Clinton, Inc.*,
    948 P.2d 298 (Okla. 1997) ............................................................... 14

*Holley v. Evangelical Lutheran Good Samaritan Soc.*,
    588 F. App'x 792 (10th Cir. 2014) ................................................. 13

*Hornady Mfg. Co. v. Doubletap, Inc.*,
    746 F.3d 995 (10th Cir. 2014) ....................................................... 5, 6

*Houck v. Hold Oil Corp.*,
    867 P.2d 451 (Okla. 1993) ............................................................... 20

*Ingraham v. KIA Motors Am., Inc.*,
    2007 WL 2028940, at *4 (W.D. Okla. July 10, 2007) ..................... 7

*James River Ins. Co. v. Rapid Funding, LLC*,
    658 F.3d 1207 (10th Cir. 2011) ................................................................. 10

*John A. Brown Co. v. Clause*,
    235 P.2d 680 (Okla. 1951) ........................................................................ 15

*Kuykendall v. Corp. Comm'n*,
    634 P.2d 711 (Okla. 1981) ........................................................................ 19

*Lockhart v. Loosen*,
    943 P.2d 1074 (Okla. 1997) ...................................................................... 12

*Martinez v. Angel Expl., LLC*,
    798 F.3d 968 (10th Cir. 2015) .................................................................. 13

*Matador Prod. Co. v. Weatherford Artificial Lift Sys., Inc.*,
    450 S.W.3d 580 (Tex. App. 2014) .......................................................... 7, 8

*Melton v. City of Okla. City*,
    879 F.2d 706 (10th Cir. 1989) .................................................................. 21

*Moore v. Texaco, Inc.*,
    244 F.3d 1229 (10th Cir. 2001) ................................................................ 10

*Myers v. Maxey*,
    915 P.2d 940 (Okla. 1995) ........................................................................ 23

*Nat'l Union Fire Ins. Co. v. Elliott*,
    298 P.2d 448 (Okla. 1956) ........................................................................ 14

*Nelson v. Enid Med. Assocs., Inc.*,
    376 P.3d 212 (Okla. 2016) ........................................................................ 12

*Ohio Oil Co. v. Elliott*,
    254 F.2d 832 (10th Cir. 1958) .................................................................. 20

*Orth v. Emerson Elec. Co., White-Rodgers Div.*,
    980 F.2d 632 (10th Cir. 1992) .................................................................... 6

*Rowell v. El Reno Junior Coll. Found., Inc.*,
    910 P.2d 962 (Okla. 1996) ........................................................................ 12

*Scaramucci v. Dresser Indus., Inc.*,
    427 F.2d 1309 (10th Cir. 1970) ................................................................ 16

*Simmons Foods, Inc. v. Willis*,
   74 F. App'x 15 (10th Cir. 2003) ........................................................ 3, 6, 7

*Stewart v. Okla. ex rel. Okla. Office of Juvenile Affairs*,
   587 F. App'x 455 (10th Cir. 2014) ............................................................ 22

*Taber v. Allied Waste Sys., Inc.*,
   642 F. App'x 801 (10th Cir. 2016) ............................................................ 13

*Thiry v. Armstrong World Indus.*,
   661 P.2d 515 (Okla. 1983) ........................................................................ 23

*Thomas v. U.S. Dep't of Energy*,
   719 F.2d 342 (10th Cir. 1983) .................................................................. 21

*Tidewater Oil Co. v. Jackson*,
   320 F.2d 157 (10th Cir. 1963) ............................................................ 16, 17

*Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*,
   830 F.3d 1171 (10th Cir. 2016) .................................................................. 6

*Twyman v. GHK Corp.*,
   93 P.3d 51 (Okla. Civ. App. 2004) ............................................... 10, 11, 12

*Ward Petroleum Corp. v. Stewart*,
   64 P.3d 1113 (Okla. 2003) ........................................................................ 16

*Wilcox Oil Co. v. Walters*,
   284 P.2d 726 (Okla. 1955) ........................................................................ 15

*Williams v. New Beginnings Residential Care Home*,
   225 P.3d 17 (Okla. Civ. App. 2009) .................................................. 6, 7, 14

*Wyoming v. United States Dept. of the Interior*,
   136 F.Supp.3d 1317, 1326 (D. Wyo. 2015) ................................................ 1

**Statutes**

23 Okla. Stat. § 9.1 ............................................................................... 14, 21

**Other Authorities**

80 Fed. Reg. 16128-01 (March 25, 2015) .......................................................... 2

Allison Rose, *Mending the Fracture: Bringing Parties Together on High
  Volume Hydraulic Fracturing Through Alternative Dispute Resolution*,
  5 Ky. J. Equine, Agric. & Nat. Resources L. 33, 66 (2013) ........................................ 9

Fed. R. Civ. P. 56........................................................................................................ 1

Fed. R. Evid. 702 ..................................................................................................... 10

Keith B. Hall & Lauren E. Godshall, *Hydraulic Fracturing Litigation*, 57
  The Advoc. (Texas) 13, 16 (2011) .............................................................................. 9

Page Keeton, Lee Jones, Jr. *Tort Liability and the Oil and Gas Industry*, 35
  Tex. L. Rev. 1 (Nov. 1956) ......................................................................................... 14

This case involves highly technical issues relating to subsurface migration of hydraulic fracturing fluids as well as effects of extreme pressures in underground formations. As a matter of law, expert testimony is necessary to establish essential elements of Plaintiffs' claims, including causation, standard of care, and measure and extent of damages. Plaintiffs failed to identify an expert witness by their expert witness deadline and therefore, have no ability to prove these elements of their claims. As a matter of law and undisputed fact, Plaintiffs have no way to make a showing at trial sufficient to establish the existence of elements essential to their case.

Accordingly, pursuant to Fed. R. Civ. P. 56, Defendant Devon Energy Production Company, L.P. ("Devon") moves the Court for summary judgment on all causes of action asserted by Plaintiffs H & S Equipment, Inc. ("H & S") and Mark Holloway, Inc. ("Holloway") (together, "Plaintiffs") in this case. The pleadings on file, together with the materials attached to Devon's Brief in Support, show there is no substantial controversy as to any material fact concerning Plaintiffs' claims. Based on the Undisputed Facts and applicable law, Devon is entitled to judgment as a matter of law against Plaintiffs.

**Brief in Support**

## BACKGROUND AND SUMMARY OF ARGUMENT

In this action, Plaintiffs seek damages allegedly arising out of a hydraulic fracturing stimulation[1] of a horizontal well in Blaine County, Oklahoma (the

---

[1] Hydraulic fracturing is a "well stimulation technique . . . by which oil and gas producers inject water, sand, and certain chemicals into tight-rock formations (typically shale) to create fissures in the rock and allow oil and gas to escape for collection in a well." *Wyoming v. United States Dept. of the Interior*, 136 F.Supp.3d 1317, 1326 (D. Wyo. 2015).

"Stimulation"). Devon's predecessor-by-merger, Felix Energy, L.L.C. ("Felix"), operated the well, the Columbine 15 No. 4AH ("Columbine Well"), when the Stimulation occurred. Devon is the current operator of Columbine Well. Plaintiffs, who are oil and gas lessees on an adjacent tract of land, allege that during the Stimulation, "frack fluid" migrated into the substrata of the tract their lease encompasses ("Section 14"), which Plaintiffs allege constitutes a subsurface trespass. Plaintiffs also allege that a "frack hit"[2] occurred as a result of the Stimulation, which, according to Plaintiffs, permanently damaged a marginal vertical well they claim an interest in located on Section 14, the Coffey No. 1-14 (the "Coffey Well").

In addition to their claim for subsurface trespass, Plaintiffs seek to hold Devon liable for the Stimulation on theories of private nuisance and negligence. Plaintiffs contend that as a result of the Stimulation, they are entitled to damages of $2.5 million. These "damages" apparently include the costs of plugging and abandoning the Coffey Well, the amount of Plaintiffs' purported loss of future net oil and gas production revenue, and costs to drill a replacement well on Section 14.[3] Plaintiffs also seek punitive damages for supposed "willful and reckless conduct."

Summary judgment should be granted in favor of Devon because Plaintiffs have no expert testimony to present to the fact-finder to establish the essential elements of their

---

[2] "Frack hit" is "a common term for a hydraulic fracturing operation that causes an unplanned surge of pressurized fluid into another well . . . ." Oil and Gas; Hydraulic Fracturing on Federal and Indian Lands, 80 Fed. Reg. 16128-01 (March 25, 2015).

[3] Plaintiffs claim that they seek $1,302,080 for the "future net oil and gas production revenue," $195,000 for the cost to plug and abandon the Coffey Well, and, in an apparent attempt to double up on the damages, an additional $1,244,000 to drill and complete a replacement well. Pls.' Initial Disclosures, attached as Exhibit 1.

claims—namely, causation, the appropriate standard of care, and the measure and extent of their damages. The matters at issue in this lawsuit, involving hydraulic fracturing, subsurface migration of "frac fluids," alleged "frack hits" due to extreme pressure in substrata underground, and oil and gas operations in general, are matters of specialized and technical knowledge, requiring expert testimony. Plaintiffs have failed to acquire <u>any</u> expert testimony and the deadline to do so has passed. Devon is entitled to judgment as a matter of law because Plaintiffs will not be able to "make a showing [at trial] sufficient to establish the existence of [] element[s] essential to [their] case." *See Simmons Foods, Inc. v. Willis*, 74 F. App'x 15, 19 (10th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (affirming summary judgment on negligence and fraud claims due to plaintiff's failure to acquire expert testimony on issues of causation). There is an absence of evidence to support Plaintiffs' claims and judgment should be granted in Devon's favor as a matter of law.

<u>**UNDISPUTED MATERIAL FACTS**</u>

1.      Plaintiffs are oil and gas lessees purporting to have interests in the center of the SE/4 Section 14, Township 15 North, Range 10 West, Blaine County, Oklahoma ("<u>Section 14</u>"). Dkt. 11 ¶¶ 4, 6-7. Plaintiffs claim to have had interests in the Coffey Well, a vertical well in Section 14, from which oil and gas was produced, and which Plaintiffs now allege is permanently destroyed. *See generally* Dkt. 11.

2.      In 2015, the Oklahoma Corporation Commission ("<u>OCC</u>") authorized Felix to drill the Columbine Well in Section 15 of the same township as the Coffey Well. *Id.* ¶¶ 11-13. The Stimulation of the Columbine Well was completed in 2015.

3.      While seeking a location exception from the OCC, Felix's reservoir engineer was specifically asked whether Felix would expect adverse impacts in Section 14 in light of the Stimulation and the Columbine Well's proposed location. He acknowledged the Stimulation would need to be "very large," but he nevertheless indicated that Felix did not expect adverse impacts in Section 14. Transcript of OCC Proceedings on March 24, 2015, Cause No. CD 201500916, attached as Exhibit 2, at pp. 13-14.

4.      Plaintiffs claim the Stimulation impermissibly extended into Section 14 and that Felix pumped frac fluids into Section 14, causing the Coffey Well to be permanently damaged. *See generally* Dkt. 11.

5.      Plaintiffs claim the Coffey Well is permanently damaged because after it was allegedly "hit" by the Stimulation, Plaintiffs attempted to swab the well and "could not get past 4700'." Pl.'s Responses to Devon's First Set of Interrogatories, attached as Exhibit 3, at pp. 3, 10.

6.      In their prayer for relief, Plaintiffs seek damages for the alleged destruction of the Coffey Well, for the oil and gas lost as a consequence of that alleged destruction, and for punitive damages. Dkt. 11 at p. 6.

7.      In their initial disclosures, Plaintiffs allege they are entitled to approximately $2.5 million in damages, an amount they base upon "future net oil and gas production revenue," the cost to plug and abandon the Coffey Well, and costs to drill and complete a replacement well. Ex. 1 at p. 2.

8.      By merger, Devon acquired Felix's interest in the Columbine Well and is currently the operator of the Columbine Well. Dkt. 11 at p. 1; *id.* ¶ 4.

9.      The Court issued a Revised Scheduling Order on February 14, 2017, which required Plaintiffs to disclose expert witnesses in chief and provide any export reports to Devon by January 15, 2017. Dkt. 30.

10.     Plaintiffs did not designate any experts in chief and did not provide Devon with any expert reports by January 15, 2017.

## <u>ARGUMENT AND AUTHORITIES</u>

## I.      PERTINENT STANDARDS FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1225 (10th Cir. 2016) (quotes omitted). Importantly, the party moving for summary judgment can discharge its burden by showing "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) ("[S]ummary judgment may be granted if the movant points out a lack of evidence to support the claim."). In opposition to this showing, the nonmoving party cannot "rest on ignorance of facts, on speculation, or on suspicion." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). Instead, the nonmovant must point to specific facts to the contrary. *Hornady*, 746 F.3d at 1001. Further, "[e]ven if the nonmovant produces some evidence,

summary judgment may be granted if that evidence is 'not significantly probative.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

While summary judgment should not be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016), when discovery is substantially complete and a party has not acquired expert testimony, summary judgment is appropriate on that basis if, due to the lack of expert testimony, the party cannot "make a showing [at trial] sufficient to establish the existence of an element essential to that party's case." *Simmons Foods*, 74 F. App'x at 19 (quoting *Celotex Corp.*, 477 U.S. at 322) (affirming summary judgment on negligence and fraud claims due to plaintiff's failure to acquire expert testimony on issues of causation).

Applying these familiar standards, Devon is entitled to judgment as a matter of law on all the claims asserted by Plaintiffs in this action.

## II. DEVON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFFS WILL NOT HAVE ANY EXPERT TESTIMONY SUFFICIENT TO ESTABLISH THE EXISTENCE OF ELEMENTS ESSENTIAL TO THEIR CLAIMS.

In Oklahoma, expert testimony is necessary and required to establish matters that "require a degree of skill [and] knowledge not possessed by the average person."[4]

*Williams v. New Beginnings Residential Care Home*, 225 P.3d 17, 30 (Okla. Civ. App.

---

[4] While federal law applies concerning the *foundation* for expert testimony, *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 636 (10th Cir. 1992), whether expert testimony is required to prove foundational elements of substantive claims is governed by state law when federal jurisdiction is based on diversity. *See, e.g., Am. Mech. Solutions, L.L.C. v. Northland Process Piping, Inc.*, 184 F.Supp.3d 1030, 1060-61 (D. N.M. 2016).

2009) (affirming summary judgment due to lack of expert testimony establishing foundational facts). "The rationale for this rule is that a trier of fact must have sufficient technical and scientific evidence at his or her disposal to answer scientific or technical questions of fact." *Id*. Here, Plaintiffs' claims require technical and scientific evidence to establish causation, the appropriate standard of care and breach, and the appropriate measure of Plaintiffs' damages—including whether those damages are actually permanent and if so, how to measure Plaintiffs' losses. Yet Plaintiffs have failed to designate *any* experts that will testify at trial in accordance with the Court's Scheduling Order (UMFs 9, 10). Accordingly, summary judgment should be granted in favor of Devon, as Plaintiffs cannot establish the existence of elements essential to their claims. *Simmons,* 74 F. App'x at 19; *Ingraham v. KIA Motors Am., Inc.*, 2007 WL 2028940, at *4 (W.D. Okla. July 10, 2007) (granting summary judgment after excluding expert because Plaintiffs relied on expert testimony to prove essential elements of claims).

> **a. Plaintiffs' claims necessarily involve analysis of technical and scientific factual matters that are not within the skill or knowledge of average persons.**

Hydraulic fracturing, which is at the heart of this action, is a complex process, involving many distinct and complex steps. *See, e.g.*, *Matador Prod. Co. v. Weatherford Artificial Lift Sys., Inc.*, 450 S.W.3d 580, 582 (Tex. App. 2014). For example, the Texas Court of Appeals described the various steps of a hydraulic fracturing operation as follows:

> The first step in a fracking operation involves pumping a particular kind of fluid (frac fluid) down a well at extremely high pressure by means of pressure pumps so that the fluid is

> forced into the tight rock formation, creating cracks in the rock that propagate along the azimuth of natural fault lines. Following the insertion of the frac fluid, a thick gel containing proppants (such as sand) is inserted under extreme pressure through perforations in the casing into the producing formation. The proppants lodge themselves in the cracks, propping them open against enormous subsurface pressure. Next, a delayed release gel breaker is added to the frac fluid. In the final flush stage, another gel breaker is used to convert the thick gel into a liquid. All of the fluid is then drained, leaving only the proppants behind so that the cracks created by the pressurized elements remain open for gas or oil to flow to the wellbore.

*Id.* (cites omitted). Yet even before this lengthy process described by the *Matador* court, a great deal of planning and design takes place:

> Engineers . . . select[] the injection pressure, volumes of material injected, and type of proppant to achieve a desired result based on data regarding the porosity, permeability, and modulus (elasticity) of the rock, and the pressure and other aspects of the reservoir. The design projects the length of the fractures from the well measured three ways: the hydraulic length, which is the distance the fracing fluid will travel, sometimes as far as 3,000 feet from the well; the propped length, which is the slightly shorter distance the proppant will reach; and the effective length, the still shorter distance within which the fracing operation will actually improve production.

*Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 7 (Tex. 2008). In spite of all this planning and engineering, however, "[e]stimates of these distances are dependent on available data and are at best imprecise. . . . [V]irtually nothing can be done to control th[e] direction [in which fractures are likely to run horizontally from the well]; the fractures will follow Mother Nature's fault lines in the formation" and take the path of least resistance. *Id.*

8

Because the consequences of the Stimulation are the basis of this action, the triers of fact assessing Plaintiffs' claims will necessarily need to understand the hydraulic fracturing process and how it works in order to even understand how the actual perforations or frac fluid involved in the Stimulation could have, or allegedly did, migrate into Section 14. This process, which involves rock formations, "azimuths" of natural fault lines, proppants, gel breakers, and "moduli," is simply not within skill or knowledge of an average juror.[5]

Indeed, the operation of oil and gas wells in general, and the accompanying processes that are part of those operations, have routinely been held to be within the realm of technical and specialized knowledge, and experts are regularly utilized in cases involving oil and gas matters, such as hydraulic fracturing and injection. *E.g., Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 169 (Tex. App. 2010) ("The operation of injection wells is not within the experience of a layman."); *Fairways Offshore Expl., Inc. v. Patterson Servs., Inc.,* 2013 WL 371601, at *6 (Tex. App. Jan. 31, 2013) ("[T]he proper operation of a sour gas well is not a matter within the experience of laypersons."); *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1283 n.2 (10th Cir. 2016) (action where plaintiffs supplied expert testimony in seeking to

---

[5] *See* Keith B. Hall & Lauren E. Godshall, *Hydraulic Fracturing Litigation*, 57 The Advoc. (Texas) 13, 16 (2011) ("[T]he resolution of hydraulic fracturing cases often will turn on fact patterns and circumstances unique to the oil and gas industry, and one or more experts likely will be needed to properly litigate the case."); Allison Rose, *Mending the Fracture: Bringing Parties Together on High Volume Hydraulic Fracturing Through Alternative Dispute Resolution*, 5 Ky. J. Equine, Agric. & Nat. Resources L. 33, 66 (2013) ("Given [high volume hydraulic fracturing's] complicated relationship with water, air, and public health, it may be necessary to have all sides agree on the science to rely upon or the scientific experts needed to complete reports or studies for stakeholders.").

enjoin drilling of oil and gas wells in New Mexico, with the court noting, "*According to Plaintiffs' expert*, hydraulically fracturing a horizontal well requires five to ten times more water than hydraulic fracturing of a vertical well.") (emphasis added).

The trier of fact in this case needs to be informed of technical and specialized information in order to assess causation, the appropriate standard of care and whether it was breached, and the measure and extent of Plaintiffs' damages. This requires expert testimony, which Plaintiff has entirely failed to acquire pursuant to the deadlines in this case. UMFs 9, 10. For this reason, summary judgment is appropriate.[6]

### b. Expert testimony is required to prove causation, an essential element to all Plaintiffs' claims.

Causation is an essential element of all Plaintiffs' claims. *See Moore v. Texaco, Inc.*, 244 F.3d 1229, 1231-32 (10th Cir. 2001) (applying Oklahoma law) (discussing a lack of evidence as to causation with respect to public and private nuisance claims); *Twyman v. GHK Corp.*, 93 P.3d 51, 61 (Okla. Civ. App. 2004) (recognizing that causation is necessary for trespass and negligence claims). A jury attempting to analyze how Felix might have caused Plaintiffs' alleged injuries, how frac fluid from the Stimulation could have migrated into Section 14, or how the Coffey Well's wellbore could have been subject to a "frack hit" would require highly technical and scientific information concerning causation and how hydraulic fracturing—and an oil and gas

---

[6] Devon is filing a forthcoming Motion in Limine objecting to Plaintiffs' Final Witness List and the topics listed therein by lay witnesses to the extent the content of that testimony offers specialized and technical knowledge by persons who have not been designated as qualified and reliable experts in accordance with Fed. R. Evid. 702. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213-16 (10th Cir. 2011) (admonishing "proffering an expert in lay witness clothing").

operation itself—works. As shown above, these matters are not within the knowledge of ordinary persons and cannot be established through lay testimony alone. As one court put it, "the material facts are hidden below miles of rock, making it difficult to ascertain what might have happened." *Coastal Oil & Gas Corp.*, 268 S.W.3d at 16.

In a case dealing with similar matters as here, *Twyman v. GHK Corp.*, the Oklahoma Court of Civil Appeals noted that expert testimony "was necessary to assist the trier of fact" where the plaintiffs alleged pollutants from oilfield operations migrated from a well site on adjoining property "through geological subsurface fractures." 93 P.3d at 56-58. The court noted that a determination of whether the losses resulted from the oilfield operations "c[ould] be made *only through data derived from several disparate scientific disciplines and is beyond the ability of the average juror without the aid of those knowledgeable of those disciplines*." *Id*. at 56 (emphasis added). The court quoted the landmark case, *Christian v. Gray*, for the principle that "[w]hen an injury is of a nature requiring a skilled and professional person to determine cause and the extent thereof, the scientific question presented must necessarily be determined by testimony of skilled and professional persons." *Id*. (quoting *Christian v. Gray*, 65 P.3d 591, 601 (Okla. 2003)).

In particular, expert testimony is necessary here to establish *proximate* causation, which—as distinguished from but-for causation—focuses on foreseeability, an unbroken chain of causation, and whether causation should be imposed as a legal matter. The Oklahoma Supreme Court has described an event's proximate cause as that "which in a natural and continuous sequence, *unbroken by an independent cause*, produces the event

11

and without which the event would not have occurred." *Lockhart v. Loosen*, 943 P.2d 1074, 1079 n.14 (Okla. 1997) (emphasis added) (quoting *Johnson v. Mid-South Sports, Inc.*, 806 P.2d 1107, 1109 (Okla. 1991)). In other words, "if the [act] complained of merely furnishes a *condition* by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." *Brown v. USA Truck, Inc.*, 2013 WL 4848837 at \*19 (W.D. Okla. Sep. 11, 2013) (emphasis added) (quoting *Pepsi-Cola Bottling Co. v. Von Brady*, 386 P.2d 993, 997 (Okla. 1964)). In short, but-for causation is necessary but insufficient for legal causation and does not take into account the "remoteness" of the cause, which might support a finding that proximate cause does not exist. *See Rowell v. El Reno Junior Coll. Found., Inc.*, 910 P.2d 962, 966 (Okla. 1996) (finding a cause to be the but-for cause, but too remote to be the proximate cause).

Proximate cause is an essential element of Plaintiffs' claims. *See, e.g.*, *Twyman*, 93 P.3d at 61. As such, if Plaintiffs cannot provide adequate expert testimony to establish proximate cause that tends to show Felix's actions, through an *unbroken*, *direct*, and *continuous* chain, directly led to Plaintiffs' alleged injuries, judgment cannot be granted in their favor by a fact finder as a matter of law. *Id.* (reversing judgment for plaintiffs and granting judgment for defendants on the basis that expert testimony was insufficient under *Daubert* standards, noting the plaintiffs "failed in their burden to prove proximate causation, an essential element of the negligence and nuisance claims.").

Plaintiffs have not designated <u>any</u> experts who will provide evidence of these matters at trial, and Devon is therefore entitled to summary judgment. *See Nelson v. Enid*

*Med. Assocs., Inc.*, 376 P.3d 212, 216 (Okla. 2016) ("[P]roximate causation "becomes a question of law for the court [] when there is *no evidence* from which a jury could reasonably find a causal nexus between the act and the injury.") (emphasis added); *Holley v. Evangelical Lutheran Good Samaritan Soc.*, 588 F. App'x 792, 793 (10th Cir. 2014) (affirming summary judgment due to lack of testimony establishing proximate cause, noting plaintiffs had failed "to establish a triable question"); *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 811-14 (10th Cir. 2016) (applying Oklahoma law) (affirming summary judgment after exclusion of expert, determining plaintiffs could not prove causation sufficient to establish negligence).

### c. Expert testimony is needed to establish the standard of care and its breach to support Plaintiffs' negligence claims and to support Plaintiffs' request for punitive damages.

As to Plaintiffs' negligence claims, expert testimony is required for another reason. To hold Devon liable for negligence, Plaintiffs must show that Felix owed a duty of care to Plaintiffs, that Felix breached that duty of care, and that the breach caused injury to Plaintiffs. *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 974 (10th Cir. 2015) (applying Oklahoma law). In showing breach, Plaintiffs must point to the applicable standard of care and specifically show how Felix breached it. This requires expert testimony on the applicable standard of care for an oil and gas operator, and in particular, that standard of care with respect to hydraulic fracturing operations. *See, e.g.*, *Discovery Operating*, 311 S.W.3d at 169 (Tex. App. 2010) (with respect to negligence claim, the plaintiff "was required to present expert testimony on the standard of care for the operation of injection wells and that BP's conduct did not meet that standard.").

13

Because Plaintiffs have failed to designate <u>any</u> experts and will not be able to provide testimony at trial as to these matters, summary judgment in favor of Devon is warranted. *Williams*, 225 P.3d at 30 (affirming summary judgment for lack of expert testimony as to standard of care and breach, noting that even if failure to give medication could be understood by lay persons as failing to meet a minimal standard of care, expert testimony still was needed to advise the jury "what the medication was for and what its absence for several days might do[, as t]he purposes and effects of medications or removal of particular medications, are matters of scientific and technical knowledge.").[7]

For this same reason, Plaintiffs cannot possibly establish they are entitled to punitive damages, which require the jury to find *by clear and convincing* evidence that Felix was either guilty of reckless disregard for the rights of others or that Felix acted intentionally or with malice. *See* 23 Okla. Stat. § 9.1. Without knowing the standard of care, these findings are impossible to make.

---

[7] To the extent Plaintiffs invoke the doctrine of *res ipsa loquitur*, expert testimony is required for that doctrine as well. *See Harder v. F.C. Clinton, Inc.*, 948 P.2d 298, 305 (Okla. 1997) ("The foundation facts [in a *res ipsa loquitur* case] can be established by expert testimony or by demonstrating that the defendant's substandard conduct falls within the realm of common knowledge. If the showing of any foundation fact requires a degree of knowledge or skill not possessed by the average person, expert testimony must be adduced."); *see also Nat'l Union Fire Ins. Co. v. Elliott*, 298 P.2d 448, 451 (Okla. 1956) (in a *res ipsa* case, "[a]n inference [of negligence] arises only from an established foundation fact."); Page Keeton, Lee Jones, Jr. *Tort Liability and the Oil and Gas Industry*, 35 Tex. L. Rev. 1 (Nov. 1956) ("[T]he trial judge should deny the plaintiff the benefit of the doctrine in the absence of expert testimony unless the accident can be said to be the kind which an ordinary person knows as much about as one in the business. . . . If it is not, then the plaintiff should be required to submit expert testimony.").

### d. Expert testimony is required to establish Plaintiffs' appropriate measure of damages.

As noted above, *Christian v. Gray* requires expert testimony for specialized matters not only as to the factual *cause* of an injury but also the injury's *extent. Christian*, 65 P.3d at 601. Further, "[w]hat elements of damages are proper and measure of damages are questions of law." *John A. Brown Co. v. Clause*, 235 P.2d 680, 684 (Okla. 1951). Plaintiffs are seeking to recover damages for injury to real property, so they bear "the burden of proving every fact essential to establish [their] cause of action, including the basis upon which a jury may calculate the financial detriment." *Wilcox Oil Co. v. Walters*, 284 P.2d 726, 730 (Okla. 1955) (quoting *Carter Oil Co. v. Means*, 71 P.2d 705 (Okla. 1937)). Here, Plaintiffs cannot meet this burden without expert testimony, dooming their claims and entitling Devon to summary judgment.

Plaintiffs make conclusory allegations that the Coffey Well has been permanently damaged and is irreparably ruined. UMFs 1, 4, 5, 6. However, Plaintiffs have no probative evidence of this outside of bald assertions, and expert testimony would be required to establish the extent of their alleged injuries. As shown above, oil and gas operations and hydraulic fracturing are matters of technical expertise. Whether a vertical well can be reworked, whether the casing of the Coffey Well actually suffered damages, if the casing of the Coffey Well could be repaired without significant cost, or if the water could be adequately pumped from the well are all essential to knowing whether Plaintiffs' injuries are really "permanent" and assessing the appropriate measure of damages. Plaintiffs contend they attempted to "swab" the Coffey Well after it was

supposedly "hit" and offer this as evidence of permanent damages, UMF 5, but the "swabbing" process in itself is technical and requires knowledge that is outside the experience of an average juror. *See Scaramucci v. Dresser Indus., Inc.*, 427 F.2d 1309, 1310 (10th Cir. 1970) (a patent case discussing the complex process of swabbing an oil and gas well).

Many cases in Oklahoma have suggested expert evidence is necessary to determine whether damages are actually permanent—entitling a plaintiff to before-and-after damages concerning value—or whether, instead, the injury could be corrected by a repair and a reasonable expenditure of money. *See, e.g.*, *Cities Serv. Oil Co. v. Merritt*, 332 P.2d 677, 685 (Okla. 1958) (mentioning expert evidence throughout, noting, "The *expert evidence* was that the subterranean strata were permanently polluted and could not be corrected within a reasonable period of time by any reasonable expenditure of money . . . and that from an engineering and geological standpoint . . . there is nothing that you can do.") (emphasis added); *Ward Petroleum Corp. v. Stewart*, 64 P.3d 1113, 1117-18 (Okla. 2003) ("The measure of damages for permanent damage in a nuisance case is diminished value, that is to say, the difference between the fair cash market value of the land just prior to the injury and the fair cash market value of the land just thereafter.").

Here, Plaintiffs cannot establish the appropriate measure of damages without expert testimony since they cannot establish their injuries are permanent without specialized evidence. Yet even if they could, they must also offer expert testimony concerning what costs should be included in a before-and-after valuation analysis. For example, in *Tidewater Oil Co. v. Jackson*, 320 F.2d 157, 164 (10th Cir. 1963), *abrogated*

*on other grounds by Fransen v. Conoco, Inc.*, 64 F.3d 1481 (10th Cir. 1995), a subsurface intrusion case, the court affirmed the judgment of the trial court, noting that the trial court's judgment was premised on lost recoverable profits from oil and gas, and was based on "competent expert testimony," which included an analysis of net loss, net profit, lifting costs, the necessity of disposing quantities of injected water, lost fuel, and acceleration of time, among other things. The court commented that trial court's findings in this regard "follow[ed] closely the creditable testimony of [the plaintiff's] expert witness." *Id*. Plaintiffs have no such evidence from which a jury could come to an appropriate valuation "supported by competent proof"—i.e., expert testimony. *Id*. at 165.

Similarly, in *Greyhound Leasing & Fin. Corp. v. Joiner City Unit*, 444 F.2d 439, 445 (10th Cir. 1971), a case dealing with a private nuisance claim based on saltwater injection and subsurface invasion, the court, in addressing an argument on appeal that the damages awarded were inappropriate, commented that when the jury was instructed concerning the before-and-after rule concerning permanent damage, the instruction was "sufficiently in conformance with [that] rule, and there was testimony of expert witnesses *upon which* the jury could so arrive at a dollar amount." (emphasis added). The necessary implication of this statement is that the jury *requires* the testimony of experts in order to arrive at a proper dollar amount *upon which* to base its award. Because Plaintiffs have no such evidence, summary judgment is appropriate.

**III.   DRAINAGE DAMAGES ARE NOT RECOVERABLE FOR TRESPASS IN OKLAHOMA AS A MATTER OF LAW DUE TO THE RULE OF CAPTURE, AND THE NEED FOR EXPERT TESTIMONY TO SUPPORT PLAINTIFFS' DAMAGES IS ESPECIALLY CRUCIAL IN LIGHT OF THIS FACT.**

In cases dealing with subsurface invasions and the depletion of oil and gas reserves, there are typically two types of damages that may be asserted—"drainage" and "non-drainage" damages. *See Coastal Oil & Gas Corp.*, 268 S.W.3d at 30 (Willett, J., concurring) (discussing these damages).   The former are premised on the idea that by virtue of the hydraulic fracturing invasion, the defendant may have drained minerals that were underlying the plaintiff's leased premises, although no other damage may have occurred. The latter, naturally, implies some type of injury irrespective from drainage— such as damage resulting from a "frack hit" to a well.

Here, Plaintiffs argue that the wellbore of the Coffey Well was "hit" (non-drainage damages) and claim they lost production associated with the Coffey Well, but it does not appear that they seek drainage damages generally. UMF 6. To the extent Plaintiffs seek both types of damages, Oklahoma courts do not generally recognize the availability of drainage damages due to the rule of capture, which provides that because oil and gas are migratory substances, they do not belong to anyone until captured and reduced to possession. *Gruger v. Phillips Petroleum Co.*, 135 P.2d 485, 488 (Okla. 1943); *Arrowhead Energy, Inc. v. Baron Expl. Co.*, 930 P.2d 181, 182 (Okla. 1996) ("[A] landowner generally 'does not own migratory substances underlying his land.'"); *Greyhound Leasing*, 444 F.2d at 443 (noting the rule of capture is held to prevail in Oklahoma, subject to the exercise of the Corporation Commission's jurisdiction).

Under this rule, an oil and gas lessee or operator, like Devon, has a specific right to drill wells on the land it has limited possessory rights in "and take from the pools below all the gas and oil that he may be able to reduce to possession *including that*

*coming from land belonging to others.*" *Kuykendall v. Corp. Comm'n*, 634 P.2d 711, 716 (Okla. 1981) (emphasis added). "Because title or ownership of migratory substances is not acquired until the substances are reduced to actual possession and controlled, an owner or his lessee *may drain the substances from under an adjacent trace without violating the rights of the owner whose tract is being drained.*" *Atl. Richfield Co. v. Tomlinson*, 859 P.2d 1088, 1095 (Okla. 1993) (emphasis added).

Accordingly, under the rule of capture, Plaintiffs cannot have suffered damages by virtue of the drainage of mineral interests alone, which were never theirs to begin with. To the extent Plaintiffs seek general drainage damages from the subsurface invasion alone, that relief is precluded as a matter of law. But more importantly, in light of this rule, Plaintiffs must present *specific* expert testimony concerning the value of their leasehold interest with regard to the Coffey Well alone, and the extent of their alleged damages from the alleged "frack hit" *irrespective* of any drainage that may have otherwise resulted from the Stimulation. Plaintiffs cannot rely on lay testimony to establish this and need an expert to specifically establish these damages. Because Plaintiffs have no expert, summary judgment in Devon's favor is appropriate.

## IV. THE APPROPRIATE MEASURE OF DAMAGES IS EITHER THE DIMINUTION IN VALUE TO PLAINTIFFS' LEASEHOLD INTEREST, OR, IF LESS, THE COST TO REPAIR AND RESTORE THE INJURIES TO THE LEASEHOLD.

If the Court is not inclined to grant summary judgment on the basis that Plaintiffs have no expert testimony whatsoever, it should order as a matter of law that Plaintiffs' recovery is capped at the diminution of their leasehold interest due to the alleged injuries.

If Plaintiffs' injuries are truly permanent as they claim, the proper measure of damages would be the before-and-after difference—i.e., the diminution—of Plaintiffs' leasehold interest in the land due to the injury. *Houck v. Hold Oil Corp.*, 867 P.2d 451, 461 (Okla. 1993) ("The measure of damages for permanent injuries to land is the difference between the reasonable market value of the land immediately before the injuries and the reasonable market value of the land immediately after the injuries.").

Even if Plaintiffs were alleging temporary injuries, "a defendant *in no event* can be held liable for more than the total diminution in reasonable market value assuming the temporary injuries were left standing or unrestored." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 938 (10th Cir. 2001) (quoting *Houck*, 867 P.2d at 461) (emphasis added); *Briscoe v. Harper Oil Co.*, 702 P.2d 33, 39 (Okla. 1985) (noting the measure of damages will be the cost of repairing the injury and restoring the land to its former condition only if that amount *is less than* the diminution in value).

Since "[t]he philosophy of the law is to fully and fairly compensate an injured person for his losses, *not to place him in a better position than he would have held had it not been for the injury*," Plaintiffs are entitled to recover only for their *detriment* and cannot seek a windfall by having Devon foot the bill for an entirely new well (*see* UMF 7). *Ohio Oil Co. v. Elliott*, 254 F.2d 832, 835 (10th Cir. 1958) (applying Oklahoma law) (emphasis added); *see also Denco Bus Lines v. Hargis*, 229 P.2d 560, 562 (Okla. 1951) ("The measure of damages for a tort is such amount as will compensate for all the *detriment* proximately caused thereby.") (emphasis added). Accordingly, the Court

should rule that Plaintiffs' damages are strictly limited to the diminution in value to their leasehold interest or the costs of repair and restoration, if that amount is less.

## V.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES BECAUSE NO RATIONAL TRIER OF FACT COULD FIND, BASED ON THE RECORD, THAT FELIX ACTED IN CONSCIOUS DISREGARD OF PLAINTIFFS' RIGHTS.

Finally, Plaintiffs are not entitled to punitive damages as a matter of law. For Devon to be liable for punitive damages, Plaintiffs must show by clear and convincing evidence that Felix "acted with ill will, desire to injure, reckless indifference, or malice" or "with wanton or reckless disregard of [Plaintiffs'] rights." *Melton v. City of Okla. City*, 879 F.2d 706, 733 (10th Cir. 1989); *Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 816 (10th Cir. 1993); 23 Okla. Stat. § 9.1. Plaintiffs' request for punitive damages should be denied at the summary judgment stage if "the record taken as a whole could not lead a rational trier of fact to find" that Felix's conduct meets this standard of recklessness. *See 19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In analyzing the "record as a whole," the Court must "examine the record and reasonable inferences drawn therefrom in the light most favorable to" Plaintiffs. *Id*. If an inference can be deduced from the facts which would allow the nonmovant to prevail, summary judgment should not be granted. *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 344 (10th Cir. 1983). But if no reasonable inference can be deduced, summary judgment is proper. *See, e.g.*, *Alt v. Am. Income Life Ins. Co.*, 337 F.2d 472, 474 (10th Cir. 1964) (affirming summary judgment where no inference from undisputed facts suggested

negligence); *Stewart v. Okla. ex rel. Okla. Office of Juvenile Affairs*, 587 F. App'x 455, 460-61 (10th Cir. 2014) (affirming summary judgment in favor of defendant where no reasonable inference of discrimination could be drawn from the facts).

Here, the undisputed facts and applicable law establish that an inference simply cannot be drawn that Felix acted with reckless indifference to Plaintiffs' rights. As an initial matter, simply engaging in hydraulic fracturing operations on a well that is properly and legally drilled cannot, in and of itself, be a reckless or malicious activity, since hydraulic fracturing is necessary to stimulate the production of oil and gas, and lessees have an explicit right (and duty) to develop. *Doss Oil Royalty Co. v. Tex. Co.*, 137 P.2d 934, 938 (Okla. 1943) ("It is the duty of the lessee to develop the premises with diligence.").

Further, Plaintiffs do not have *any* evidence whatsoever to show the Stimulation was conducted in a reckless or indifferent manner or in conscious disregard of Plaintiffs' interests. The undisputed facts actually show the opposite. While seeking a location exception, Felix's reservoir engineer was s*pecifically asked* by the OCC about adverse impacts that could occur in Section 14 due to the Stimulation and the location of the Columbine Well. UMF 10. Felix's engineer affirmatively stated that Felix did not expect any adverse impacts in Section 14, even though he acknowledged the Stimulation would have to be "very large." Ex. 2 at 13-14 ("**Q.** And would you expect, with the tight nature of the reservoir, that you *wouldn't have adverse impact back to the east in Section 14*? **A.** Yes.") (emphasis added). This evidence shows Felix did not act in conscious disregard of Plaintiffs' rights, but instead, did not believe those rights would be impacted.

22

In other words, the undisputed evidence leads to only one conclusion—if a "frack hit" occurred, it was at most inadvertent, and Felix's engineers did not consciously disregard the risk that Plaintiffs might be impacted. Further, an inference of mere inadvertence, at most, is attributable to the fact that in general, engineering estimates of the distances of perforations in a hydraulic fracturing operation "are dependent on available data and at best imprecise . . . [and] virtually nothing can be done to control th[e] direction [in which fractures are likely to run]." *Coastal Oil & Gas Corp.*, 268 S.W.3d at 7; *id.* at 32 (Willett, J., concurring) ("Fracing is required but also imprecise . . . . [W]e are talking about fissures of immeasurable length and uncontrollable direction.").

The recklessness required to support punitive damages "is not to be confused with inadvertent conduct." *Thiry v. Armstrong World Indus.*, 661 P.2d 515, 518 (Okla. 1983); *see also Myers v. Maxey*, 915 P.2d 940, 947-48 (Okla. 1995) (noting that even if the court accepted that defendant was negligent, there was no evidence in the record to support punitive damages because the defendant had "legitimate reasons" for acting how he did). Here, even if Plaintiffs could show Felix was negligent, and they cannot, that showing alone would not equate to recklessness. An inference of recklessness cannot be deduced from the facts, and summary judgment on the issue of punitive damages is appropriate.

## **CONCLUSION**

For the foregoing reasons, Devon is entitled to summary judgment in its favor as a matter of law.

Dated this 15th day of March, 2017.

*s/ Timothy J. Bomhoff*
Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone:   (405) 235-9621
Facsimile:     (405) 235-0439
tim.bomhoff@mcafeetaft.com
laura.long@mcafeetaft.com

*Attorneys for Defendant Devon Energy*
*Production Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th of March, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing based on the records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following registrants:

John E. Lee, III
Alvin R. Wright
1800 Canyon Park Circle, Suite 201
Edmond, Oklahoma 73013
Jlee@arwright.com

*s/Timothy J. Bomhoff*
Timothy J. Bomhoff

24